UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA and
STATE OF FLORIDA ex rel. CHARLES
ORTOLANO,

      Plaintiffs,

-vs-             Case No. 5:10-cv-583-Oc-10TBS

AMIN RADIOLOGY d/b/a CITRUS
DIAGNOSTIC CENTER,

      Defendant.
_____/

## O R D E R

  This is a *qui tam* action[1] brought under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, ("FCA") and the Florida False Claims Act, Fla. Stat. §§ 68.081, *et seq.* (Doc. 1). The relator, Charles Ortolano, initiated this case against his former employer, Defendant Amin Radiology ("Amin") by filing a Complaint under seal on November 3, 2010, and the United States has declined to intervene (Doc. 11).

---

[1] A *qui tam* action permits a private individual, know as a relator, to bring an action on his own and the Government's behalf. United States ex rel. Matheny v. Medco Health Solutions, Inc., 671 F.3d 1217, 1219 n. 2 (11th Cir. 2012). The complaint is first filed under seal to allow the Government time to investigate and intervene. 31 U.S.C. § 3730(b). If the Government chooses not to intervene, the relator may continue the action, and if successful, may recover between 25 and 30 percent of the judgment or settlement, plus reasonable expenses, attorney's fees, and costs. 31 U.S.C. § 3730(c)(3) and (d)(2). An entity that violates the Fair Claims Act is liable to the Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted for inflation, plus treble damages. 31 U.S.C. § 3729(a)(1)(G).

On September 19, 2012, the Court ordered that the Amended Complaint be unsealed and served upon Amin (Doc. 11). The four-count Amended Complaint alleges that Amin violated the FCA and the Florida False Claims Act by engaging in multiple schemes to unlawfully bill Medicare and Medicaid for magnetic resonance imaging ("MRI") and positron emission tomography ("PET") diagnostic procedures at Amin's radiology testing facilities (Doc. 12).[2]

The case is presently before the Court for consideration of Amin's motion to dismiss the Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Doc. 17). Mr. Ortolano has filed a timely response in opposition (Doc. 27). Upon due consideration, and for the reasons discussed below, the motion to dismiss will be granted in part and denied in part.

## **Background**

Amin is a private company established in 1992 and incorporated in Florida. It operates an open and high field MRI center called Citrus Diagnostic Center in Crystal River, Florida (the "Citrus Center"). The Citrus Center is accredited to perform MRI, mammography, and PET scans. In 2006, Amin opened a second MRI center called

---

[2]As it pertains to this case, the False Claims Act imposes civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or who "knowingly makes, uses, or causes to be used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B). The Florida False Claims Act mirrors the federal False Claims Act, and is subject to the same pleading standards. See United States v. All Children's Health System, Inc., Case No. 8:11-cv-1687-T-27EAJ, 2013 WL 1651811, at * 5 (M.D. Fla. Apr. 16, 2013); United States v. Adventist Health Sys./Sunbelt, Inc., Case No. 6:10-cv-1062-Orl-28GJK, 2012 WL 3105586, at *2 n. 4 (M.D. Fla. July 30, 2012).

Dunnellon Open MRI in Dunnellon, Florida (the "Dunnellon Center"). The Dunnellon Center is also accredited to perform MRI scans. Two board-certified Radiologists are affiliated with both Centers, Kamalesh A. Amin, M.D., and Scott R. Fisher, M.D.

Amin hired Mr. Ortolano in June 2000 as a nuclear medicine technician at the Citrus Center. In that role he personally observed Amin's practices concerning the operation of MRI and PET machinery, and he alleges he has personal knowledge concerning Amin's Medicare and Medicaid billing practices.

According to Mr. Ortolano, sometime after Amin began to operate the Citrus Center in 1992, it enrolled in the federal Medicare and Medicaid programs as a physician practice group.[3] In 2006, Amin enrolled the Dunnellon Center in the Medicare program as an additional physician practice group. However, Mr. Ortolano contends that Amin should have enrolled the Dunnellon Center as an independent diagnostic testing facility ("IDTF"),[4]

---

[3] Medicare only pays for diagnostic procedures if they are provided by a registered physician, physician practice group, an approved supplier of portable x-ray services, a nurse practitioner, or an independent diagnostic testing facility. 42 C.F.R. § 410.33(a)(1).

[4] "An IDTF is a facility that is separate and independent of a hospital or a physician's office, where patients go to obtain certain x-rays, scans, and other imaging and diagnostic tests that are ordered by the patients' physicians." United States ex rel. Hobbs v. Medquest Assocs., Inc. ("Hobbs I"), 702 F. Supp. 2d 909, 912 (M.D. Tenn. 2010). An IDTF may be a fixed location, a mobile entity, or an individual nonphysician practitioner. 42 C.F.R. § 410.33(a)(1). An IDTF must have one or more supervising physicians who are responsible for providing general supervision of the procedures at the facility, and for procedures requiring direct or personal supervision, the IDTF's supervising physician must personally furnish that level of supervision. 42 C.F.R. §§ 410.33(b)(1), (2).

and that by improperly registering the Dunnellon Center, Amin has violated Medicare regulations.[5]

On February 15, 2006, Dr. Kamalesh A. Amin, in his role as the appointed official of Amin, signed on behalf of the Company a Medicare Certification Statement contained in CMS Form 855B. By signing the Statement, which was part of the registration process for the Dunnellon Center, Amin certified that it would abide by all Medicare laws, regulations and program instructions, and acknowledged that "payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions . . . and on the supplier's compliance with all applicable conditions of participation in Medicare." (Doc. 12, ¶¶ 21, 46). Mr. Ortolano alleges that by signing this statement while at the same time improperly registering the Dunnellon Center, Amin knowingly made a materially false representation to Medicare and Medicaid. Mr. Ortolano further alleges that Amin would not have been eligible for Medicare reimbursements if it had not submitted the CMS Form 855B Certification Statement containing this false representation.

---

[5]Mr. Ortolano alleges that Medicare requires a provider performing diagnostic tests to enroll as an IDTF unless, among other things, the provider primarily bills for physician services, and any diagnostic tests are performed and interpreted at the same location where the practice physicians also treat patients for their medical conditions. He further alleges that a radiology provider of diagnostic services must enroll as an IDTF unless, among other things: (1) a radiologist regularly performs physician services at the location where the diagnostic tests are performed; (2) the entity's billing patterns reflect that it is not primarily a testing facility, but was organized to provide the professional services of radiologists; and (3) a substantial majority of the radiological interpretations are performed at the practice location where the diagnostic tests are performed. (Doc. 12, ¶¶ 19-20). Mr. Ortolano does not cite to any legal authority supporting these requirements.

The Dunnellon facility employs a technician who performs the technical components of the MRIs, which are then sent to the Citrus Center for Drs. Amin and Fisher to interpret. Mr. Ortolano alleges that Neither Dr. Amin nor Dr. Fisher were present at the Dunnellon Center at the time the procedures were performed, and did not interpret any results at that Center. Rather, these doctors at all times remained at the Citrus Center. Mr. Ortolano contends that this practice violates Medicare regulations, which require as a condition of payment that MRI procedures using contrast dye be directly supervised by a qualifying physician. See 42 U.S.C. § 1395y(a)(1)(A); 42 C.F.R. §§ 410.32(b)(1) and (b)(3).[6]

Mr. Ortolano further alleges that the absence of a physician on the premises of the Dunnellon Center establishes that the Dunnellon Center was operating as an IDTF, because a radiologist did not regularly perform physician services at that Center, the billing patterns reflected that it was primarily a testing facility, and a substantial majority of the radiological interpretations were not performed at the Dunnellon Center. (Doc. 12, ¶ 47).

---

[6]Medicare prohibits reimbursement of procedures or services unless they are "reasonable and necessary for the diagnosis and treatment of illness or injury. . . ." 42 U.S.C. § 1395y(a)(1)(A). Medicare defines "reasonable and necessary procedures" in part, as those furnished under the appropriate level of supervision. 42 C.F.R. § 410.32(a)(1). The regulations set out three levels of supervision: general, direct, and personal. 42 C.F.R. § 410.32(b)(3). "General supervision means the procedure is furnished under the physician's overall direction and control, but the physician's presence is not required during the performance of the procedure." § 410.32(b)(3)(i). Direct supervision is defined as requiring a physician to be actually "present in the office suite and immediately available to furnish assistance and direction throughout the procedure." § 410.32(b)(3)(ii). Personal supervision "means a physician must be in attendance in the room during the performance of the procedure." § 410.32(b)(3)(iii). Mr. Ortolano alleges that Amin's Current Procedural Terminology describes MRI procedures with contrast dye as requiring "direct supervision" as defined by Medicare. (Doc. 12, ¶ 15). Amin does not dispute this allegation.

5

According to Mr. Ortolano, Medicare and Medicaid (as well as the State of Florida) would not have paid any of the claims submitted for services performed at the Dunnellon Center, if those programs were aware that Amin had not enrolled the Center as an IDTF, and that Amin was allowing MRI procedures to be performed without direct supervision.

Mr. Ortolano also alleges that Medicare and Medicaid require MRI and PET procedures submitted for reimbursement to be performed by licensed and certified technicians, and that Amin routinely submitted claims that did not satisfy this requirement. Specifically, Mr. Ortolano alleges that at some point in 2001, Amin hired Brooke Yanko to serve as a open MRI technician at the Citrus Center. After Amin acquired the Dunnellon Center, Ms. Yanko also performed MRI procedures at that location. Ms. Yanko is not, and never has been certified or licensed to perform MRIs. Yet, beginning in 2001, Amin submitted claims to Medicare and Medicaid for reimbursement of MRI procedures performed by Ms. Yanko.

In addition, beginning in 2006, Amin employed James Edwards, Josh Wilson, Ashley Birscoe, and another unnamed individual to perform PET scans. Mr. Ortolano contends that Amin knew that these persons were also not licensed or certified nuclear medical technicians, but were merely certified as general radiologists. Nevertheless, Amin routinely and continuously submitted claims to Medicare and Medicaid for reimbursement of these PET scans, even though Amin was aware that they were not performed by licensed and certified technicians.

In support of these allegations, Mr. Ortolano has submitted a four-page spreadsheet listing more than 300 claims submitted to Medicare for reimbursement between 2005 and 2011 (Doc. 12, Ex. A). The spreadsheet details the billing providers' Medicaid ID number, the year the service was provided, the procedure and procedure code, the location where the procedure was performed (either the Citrus Center or the Dunnellon Center), the referring provider information where applicable, the total billed for each procedure, and the amount reimbursed. Thirty of the listed claims are for procedures performed at the Dunnellon Center, and the remaining claims are for procedures performed at the Citrus Center. Id.

Mr. Ortolano also specifically refers in his Amended Complaint to two procedures, an MRI performed at the Dunnellon Center, and a PET scan performed at the Citrus Center. He contends that both of these procedures were falsely submitted to Medicaid for reimbursement (the MRI scan on July 15, 2009 and the PET scan on May 21, 2009), even though the MRI scan was performed without direct supervision while the Dunnellon Center was improperly registered as physician practice group, and the PET scan was performed by an unlicensed and uncertified technician. (Doc. 12, ¶¶ 51-52).

**Standard of Review**

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate." Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv., 400 F.2d

7

465, 471 (5th Cir. 1968). For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences that might be drawn from such allegations. Speaker v. U.S. Dep't of Health & Human Servs., 623 F.3d 1371, 1379 (11th Cir. 2010); Jackson v. Okaloosa County, Fla., 21 F.3d 1532, 1534 (11th Cir.1994). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

In order to avoid dismissal, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" and that rises "above the speculative level." Speaker, 623 F.3d at 1380 (citing Twombly, 550 U.S. at 570, 127 S. Ct. at 1964–65, 1974). A claim is facially plausible "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). The plausibility standard requires that a plaintiff allege sufficient facts to nudge his "claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft, 556 U.S. at 678, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65).

When a complaint alleges violations of the False Claims Act, the complaint must also comply with Fed. R. Civ. P. 9(b)'s heightened pleading standard, which requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); see also United States ex rel. Clausen v. Lab Corp. of Am., Inc., 290 F.3d 1301, 1308-09 (11th Cir. 2002) (extending Rule 9(b) to False Claims Act claims). The particularity requirement of Rule 9(b) is satisfied if the complaint alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1324 (11th Cir. 2009) (internal quotation marks omitted) (citing Clausen, 290 F.3d at 1310). Generally in order to plead the submission of a false claim with particularity, "a relator must identify the particular document and statement alleged to be false, who made or used it, when the statement was made, how the statement was false, and what the defendants obtained as a result." United States ex rel. Matheny v. Medco Health Solutions, Inc., 671 F.3d 1217, 1225 (11th Cir. 2012).

## Discussion

Mr. Ortolano has asserted four claims against Amin: (1) knowingly presenting false claims for payment in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A); (2) knowingly using false statements that are material to a false or fraudulent claim in violation of the FCA, 31 U.S.C. § 3729(a)(1)(B); (3) knowingly making or using a false record or statement material

to an obligation to pay or transmit money to the Government in violation of § 3729(a)(1)(G) of the FCA; and (4) parallel violations of the Florida False Claims Act, Fla. Stat. §§ 68.081, *et seq.* (Doc. 12). He seeks treble damages, an $11,000 penalty for each false claim presented, and attorney's fees and costs.

Mr. Ortolano's claims center on three main contentions: (1) that Amin failed to properly register the Dunnellon Center as an IDTF, and therefore all claims submitted to Medicare from that Center were fraudulent; (2) that Amin submitted claims to Medicare and Medicaid from the Dunnellon Center for PET and MRI procedures that were performed without the proper level of supervision; and (3) that Amin submitted claims to Medicare and Medicaid from both Centers for PET and MRI procedures that were performed by unlicensed and uncertified technicians. Amin contends that Mr. Ortolano has failed to allege a claim for relief under Fed. R. Civ. P. 8(a) under any of these causes of action or legal theories and has also failed to satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b).

**I.     The Failure to Register as an IDTF Claims**

Amin first argues that Mr. Ortolano has failed to properly allege any claims for relief with respect to Amin's purported requirement to register the Dunnellon Center as an IDTF as opposed to a physician practice group. Specifically, Amin argues Mr. Ortolano has not cited to any Medicare regulations or other relevant authority that support his allegations on this point. Because there is no such authority, Amin contends that it did not violate any

regulations, and in turn did not submit any false claims or make any express or implied false statements to Medicare or Medicaid.

Mr. Ortolano has asserted two separate legal theories with respect to IDTF enrollment. First, he contends that the enrollment form that Amin submitted for the Dunnellon Center in 2006 was false because it failed to classify the Dunnellon Center as an IDTF. The logic of this theory is as follows: (1) Amin submitted a materially false statement to Medicare; (2) the enrollment form is a necessary step in the reimbursement process for all procedures performed at the Dunnellon Center; and (3) *ergo* every claim submitted by Amin from the Dunnellon Center was false and/or fraudulent.

Second, Mr. Ortolano alleges an "implied certification theory," "which holds a defendant liable for violating the 'continuing duty to comply with the regulations on which payments is conditioned.'" United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc., 400 F.3d 428, 454 n. 20 (6th Cir. 2005) (quoting United States ex rel. Augustine v. Century Health Servs., Inc., 289 F.3d 409, 415 (6th Cir. 2002)).[7] To support this "implied certification theory, Mr. Ortolano relies on the Certification Statement Dr. Amin signed on CMS Form 855B, in which Amin agreed that it would comply with all Medicare regulations when it submitted every claim for reimbursement. Mr. Ortolano alleges that this Certification Statement was false, because Amin knowingly violated Medicare regulations

---

[7] The "implied certification theory" is viable in the Eleventh Circuit. See United States ex rel. McNutt v. Haleyville Med. Supplies, Inc., 423 F.3d 1256, 1259 (11th Cir. 2005); United States ex rel. Freedman v. Suarez-Hoyos, 781 F. Supp. 2d 1270, 1278-79 (M.D. Fla. 2011).

concerning enrollment of the Dunnellon Center as an IDTF, and that filing the Certification Statement was also a condition of payment for every single claim submitted by Amin.

As an initial point, it is clear from Mr. Ortolano's response (Doc. 27) that his claims with respect to IDTF enrollment relate solely to Amin's purported false claims submitted to Medicare. As Amin correctly notes, there is no comparable IDTF registration regulation in either the state or federal Medicaid scheme.[8] And when focusing solely on Medicare regulations, it is equally clear that Mr. Ortolano's claims cannot go forward, regardless of which legal theory he pursues.

In his Amended Complaint, Mr. Ortolano cites to one regulation, 42 C.F.R. § 410.33, which defines an IDTF and provides that Medicare will pay for diagnostic procedures "only when performed by a physician, a group practice of physicians, an approved supplier of portable x-ray services, a nurse practitioner, or a clinical nurse specialist when he or she performs a test he or she is authorized by the State to perform, or an independent diagnostic testing facility (IDTF)." 42 C.F.R. § 410.33(a)(1). See Doc. 12, ¶ 12. This regulation does not specify that a provider such as Amin must enroll in Medicare as one category of medical provider versus another, and does not provide any penalties for mis-classification. Mr. Ortolano has not cited to any other legal authority that would require such enrollment, and the Court has not identified any such authority. Thus, it does not

---

[8]See e.g., Florida Medicaid Physicians Services Coverage and Limitations Handbook, p. 2-51 ("Diagnostic services are best directed and managed by a physician practice, inpatient hospital, outpatient hospital, county health department, or rural health clinic. Medicaid does not enroll or reimburse IDTF's or other independent mobile diagnostic units.").

appear that Amin failed to comply with any regulations when it registered the Dunnellon Center as a physician practice group.

The Sixth Circuit recently spoke to this precise issue.[9]  In United States ex rel. Hobbs v. MedQUest Associates, Inc., 711 F.3d 707 (6th Cir. 2013) ("Hobbs II"), the court of appeals was faced with a medical provider that purchased a physician practice group and operated it as an IDTF for months without changing its Medicare enrollment status to that of an IDTF.  The court of appeals held that this failure to classify the physician practice group as an IDTF did not constitute a violation of any Medicare regulations, and in turn, did not constitute a claim under the FCA.  Hobbs II, 711 F.3d at 718 ("Enrollment and approval are not required for an entity to be an IDTF.  No provision in the relevant statutes, regulations, or interpretive rules establishes this requirement.").  The court was further persuaded by the fact that the medical provider was already enrolled in Medicare, it simply had not updated its enrollment information to account for the fact that it was really operating as an IDTF, and such a failure to update information was not a violation of a condition of payment under Medicare.  Id.

The Court agrees with the Sixth Circuit, and finds that Amin's enrollment of the Dunnellon Center as a physician practice group instead of as an IDTF does not constitute a violation of any Medicare regulations, and does not constitute a false or fraudulent statement which was submitted in order to receive payment from Medicare.  Like the

---

[9]Hobbs II appears to be the only decision, published or unpublished, to address the IDTF enrollment question.

provider in Hobbs II, Amin registered the Dunnellon Center with Medicare and its enrollment was accepted. The only purported violation is the mis-classification of the Dunnellon Center as a physician practice group. While the regulations require a medical provider to enroll in the Medicare program as a condition of payment, cf. 42 U.S.C. § 1395cc, there is no requirement that the provider enroll specifically as one type of provider versus another, and more specifically, such a classification requirement is clearly not a condition of Medicare reimbursement such that an FCA claim would lie. See United States ex re. Clausen v. Laboratory Corp. of America, Inc., 290 F.3d 1301, 1311 (11th Cir. 2002) ("The False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe."). Because Amin did not violate any Medicare regulations by mis-classifying the Dunnellon Center as a physician practice group, the Court cannot say that the enrollment form Amin submitted was materially false, and/or that this mis-classification impacted the reimbursement payments received from Medicare.

To the extent Mr. Ortolano seeks to pursue the IDTF enrollment issue under a false certification issue, that claim must also be dismissed. To be sure, Amin certified that it would comply with all Medicare regulations while it was an enrolled service provider. However, as discussed above, Mr. Ortolano has not cited to any regulation that Amin violated when it purportedly mis-classified the Dunnellon Center as a physician practice group instead of as an IDTF. More importantly, Mr. Ortolano has not pointed to any

Medicare regulations or other authority that condition Medicare reimbursement payments upon Amin properly classifying the Dunnellon Center as an IDTF. Cf. United States ex rel. Wilkins v. United Health Group, Inc., 659 F.3d 295, 308 (3d Cir. 2011) (dismissing FCA claims based on purported violations of Medicare marketing regulations, where Medicare payments were not conditioned on defendant's compliance with the regulations); Chesbrough v. VPA, P.C., 655 F.3d 461, 468 (6th Cir. 2011) (dismissing FCA claims where relator cited to 42 C.F.R. §§ 410.32(b)(3) and 410.33(a), but did not identify any regulations upon which payments were conditioned that the defendant allegedly violated). Under the facts as alleged in the Amended Complaint, Mr. Ortolano has not stated any viable claims for relief under the FCA with respect to the enrollment of the Dunnellon Center as a physician practice group. The motion to dismiss will be granted as to these claims.[10]

## II. Claims Concerning Lack of Supervision, Brooke Yanko, and Unlicensed Technicians

Amin next argues that Mr. Ortolano's allegations concerning the purported lack of supervision over MRI and PET scans at the Dunnellon Center, and the allegations concerning Brooke Yanko and other unlicensed technicians are conclusory and do not satisfy the heightened pleading requirement imposed on FCA claims. The Court disagrees. In his Amended Complaint, Mr. Ortolano alleges that Medicare requires specific levels of

---

[10]Mr. Ortolano's reference to United States ex rel. Tyson v. Amerigroup Illinois, Inc., 488 F. Supp. 2d 719 (N.D. Ill. 2007) is unavailing. In Tyson, the relator proceeded under an implied certification theory; however, the defendant was alleged to have engaged in health-status discrimination by charging pregnant woman higher rates for services – a clear violation of Medicare regulations.

supervision over MRI and PET scans in order for such procedures to be eligible for reimbursement, and he specifies the precise level of supervision required for the procedures performed at the Dunnellon Center (Doc. 12, ¶¶ 13-16). He further alleges that there was no radiologist or other physician present at the Dunnellon Center when MRI and PET scans were performed, nor was there any physician on the premises to interpret the results (Id., ¶¶ 47, 50). Lastly, Mr. Ortolano alleges that due to this lack of supervision, every single MRI and PET procedure performed at the Dunnellon Center that was submitted for reimbursement constituted a false claim, and he identifies numerous such procedures that were submitted for reimbursement (Id., ¶¶ 51, Ex. A). These allegations, coupled with the fact that Mr. Ortolano was an insider working for Amin during the relevant time period and in a position to personally observe these events, is more than sufficient to satisfy the "indicia of reliability" required to properly assert an FCA claim for relief. See United States ex rel. Walker v. R&F Properties of Lake County, Inc., 433 F.3d 1349 (11th Cir. 2005); Hill v. Morehouse Medical Assoc., Inc., No. 02-14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003). This portion of Amin's motion to dismiss shall be Denied.

For these same reasons, Amin's challenge to Mr. Ortolano's claims with respect to procedures performed by Brooke Yanko and other unlicensed technicians fails. Notably, Amin does not challenge Mr. Ortolano's asserting that performing MRI and PET scans by unlicensed technicians violates Medicare and Medicaid regulations. Moreover, Mr. Ortolano alleges the dates of employment for each of these unlicensed and uncertified technicians, alleges the procedures they performed, identifies the Medicare CPT codes for

the procedures that were submitted for reimbursement, and alleges that every claim submitted to Medicare and Medicaid that was performed by these technicians violated applicable regulations and, in turn, constitutes a claim under the FCA (Doc. 12, ¶¶ 52-54, 46-49, Ex. A). See United States ex rel. Testino v. Augusta Med. Sys., Case No. 07-cv-D0146 (S.D. Ga. July 31, 2011) (allegations that every claim submitted for reimbursement was false, coupled with allegations detailing why the claims were false were sufficient to survive a motion to dismiss). Mr. Ortolano's role as an insider at Amin who was in a position to personally witness these events provides further indicia of reliability. Walker, 433 F.3d at 1359-60. Again, this is sufficient to set forth a valid claim for relief, and Amin's motion to dismiss will be denied as to these issues.[11]

### III. Allegations Establishing Actual Submission of False Claims

Lastly, Amin argues that Mr. Ortolano has not sufficiently alleged that Amin ever in fact submitted any false or fraudulent claims to Medicare or Medicaid for reimbursement. The "central question" in a claim brought under the FCA is "whether the defendant ever presented a 'false or fraudulent claim' to the government." Hopper, 588 F.3d at 1326 (quoting Clausen, 290 F.3d at 1311). "Without the *presentment* of such a claim, while

---

[11]Amin's argument that Mr. Ortolano cannot satisfy the heightened pleading requirements because he includes the phrase "upon information and belief" in his Amended Complaint is without merit. Mr. Ortolano has alleged numerous facts establishing his personal knowledge of the events in question based on his insider status, and has pleaded details of the allegedly fraudulent acts, when they occurred, and who engaged in them. See United States ex rel. Shurick v. Boeing Co., Case No. 6:07-cv1765-Orl-31GKJ, 2008 WL 5054739 at * 3 (M.D. Fla. Nov. 21, 2008); United States ex rel. Heater v. Holy Cross Hosp., Inc., 510 F. Supp. 2d 1027, 1036 (S.D. Fla. 2007).

practices of an entity that provides services to the Government may be unwise or improper, there simply is not actionable damage to the public fisc as required under the False Claims Act." Clausen, 290 F.3d at 1311 (emphasis in original). "The False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." Id.

"[I]f Rule 9(b) is to be adhered to, some indicia of reliability must be given in the complaint to support the allegation of *an actual false claim* for payment being made to the Government." Clausen, 290 F.3d at 1311(emphasis in original). Mr. Ortolano has done just that. Not only was he an insider able to personally observe the false and fraudulent schemes, but he has made detailed allegations of Amin actually presenting false claims. He discusses two procedures, an MRI scan submitted for reimbursement on July 15, 2009, and a PET scan submitted for reimbursement on May 21, 2009 (Doc. 12, ¶¶ 51-52). These procedures were allegedly performed in violation of various Medicare regulations (improper level of supervision and uncertified technicians) and Mr. Ortolano alleges that they were actually submitted for Medicaid reimbursement. In addition, Mr. Ortolano has attached an spreadsheet listing over 300 claims that Amin actually submitted for reimbursement (and received payment on), every single one of which he claims were based on false representations. The details contained on this spreadsheet, which include the amount of the charges submitted, the dates the procedures were performed, the date the charges were submitted, and the amount reimbursed, coupled with Mr. Ortolano's other factual

allegations are more than enough to satisfy Rule 9(b) and the jurisprudence concerning pleading an FCA claim. Cf. United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1358-59 (11th Cir. 2006) (affirming dismissal of FCA claim where relator did not allege the amounts of charges, actual dates, policies about billing, and did not provide a single copy of a bill or payment). This information is also more than enough to put Amin on notice of the charges against it and to mount a proper defense. The motion to dismiss shall be Denied on this point.

## **Conclusion**

Accordingly, upon due consideration, it is hereby ORDERED that the Defendant Amin Radiology, Inc.'s Motion to Dismiss First Amended Complaint (Doc. 17) is GRANTED IN PART AND DENIED IN PART. All claims relating to Amin's purported failure to register the Dunnellon Center as an independent diagnostic testing facility ("IDTF") are DISMISSED. In all other respects, the motion to dismiss is DENIED. The case shall proceed in accordance with the Case Management and Scheduling Order (Doc. 24).

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 3rd day of October, 2013.

_____
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record
Maurya A. McSheehy